### M'CLINTOCK & AL. vs. CAIRNES & AL.

An attachment will not lie where the debt is not due, and the debtor resides out of the state.

APPEAL from the court of the parish and city of New Orleans.

MATTHEWS, J. delivered the opinion of the court. This suit was commenced by attachment; and is very similar to the case of *Charters* vs. *Cairnes & al.* decided in this court and reported in 4 *N. S. p.* 1. The plaintiffs and all the defendants except Rogers, the garnishee, are citizens of the state of New York; and the decision of the cause, in relation to its merits, depends on the laws of that state, which in the former case we held to be favorable to the claims of the defendants. Since the final judgment therein rendered, a decision has been pronoun-

EasternDis't
*March*, 1827.

M'CLINTOCK
& AL.
*vs.*
CAIRNES &AL

sed in the highest tribunal of the place of contract, under which the defendants claim the property in dispute, against the validity of the deed by which it was conveyed to them; and the court below, in accordance with that decision, gave judgment for the plaintiffs, from which the defendants appealed.

Several bills of exception are found in the record, which require to be noticed before we enter into a discussion of the merits of the case. The first is at page 33; and was taken to the opinion of the judge *a quo*, by which he refused to dismiss the attachment on the ground that the affidavit appeared not to be founded in fact. This motion was made, it seems, after the cause had been proceeded in for some time, on its merits, and was overruled by the judge, as having been made too late. In support of his right to disprove the facts, as stated in the affidavit, on which the attachment issued, the counsel for the defendants relies on the d section of the act of 1817, amendatory of the several acts, to organise the courts of the state, &c. By that section, authority is given to any court of competent jurisdiction,

Eastern Dis'ct
March, 1817.

McClintock,
& al.
vs.
Cairnes & al.

to issue attachments to secure and enforce the payment of debts, not actually due, whenever the said court shall be satisfied by the oath of the creditor, &c. of the existence of the debt, and that the debtor is about permanently to depart from this state, or intends to remove his property out of the same; Provided, always, that the defendant may be released from such attachment, by proving to the satisfaction of the court which issued it, that the facts on which it was founded were not truly stated; or, he may be released by giving bond and security that the property attached shall not be removed from the state, &c. According to the terms of this law, it is contended that the authority to issue attachments for the security or recovery of debts not actually due, must be confined to cases of debtors residing within the state, and who are about to remove themselves or send away their property.

The manner in which the bill of exceptions is worded, does not, in the most proper way, bring into discussion, the section of the law on which it seems to be based.— The question would have come more regularly before the court, on a plea to the legal-

ity of the proceeding, made in *limine litis*,
and a motion to dismiss the suit. The answer
filed by an attorney appointed by the court
below, to represent the defendant, contains
a denial that he was in any manner before
the court, and a plea to its jurisdiction; al-
leging as reasons in support of these pleas,
the residence of the defendant out of the
state, and want of property therein.

In ordinary cases of attachment founded
on debts due, as the remedy does not con-
form to the usual course of legal proceed-
ings, which requires defendants to be cited
before judgment, courts of justice always
insist on strict pursuance of a law which
grants such remedy; and it appears to us that
the necessity of requiring this strictness o$^f$
pursuit is much more urgent in a case like
the present, where a recovery is sought of a
debt not due at the time of obtaining the
writ. The section of the act under which
it was issued, is certainly severe in deroga-
ting from the customary principles of juris-
prudence; and ought, therefore, to be con-
fined within the narrowest limits which its
phraseology will permit. There is such ev-
ident injustice in allowing a person to be

pursued for a debt not due, that nothing can justify such a measure, except conduct on the part of the debtor, which may be considered as fraudulent in relation to his creditor; or failure, which has the legal effect of causing all his debts to become due; and in this latter case, he must be pursued in conformity with rules established for the government of insolvencies. The legislature might (perhaps with propriety) have considered the conduct of a person who had contracted debts within the state, and was about to remove from it, or send away his property, before they became due, as operating fraudulently on his creditors; and, therefore, granted the remedy as enacted by the section of the law above cited. But we are of opinion, that it cannot consistently with any principles of justice or equity, be extended to debtors who actually resided out of the state at the time of contracting debts. They are, most clearly, not the persons designated by the act as being about to remove; neither can their conduct, in causing any property they have in the state to be taken out of it, be considered as fraudulent; for it would be most unreasonable to

suppose that an owner is not to be allowed to collect and take possession of his property and funds, at the end of any commercial enterprize in which he may have placed them. To tolerate pursuits like the present, would be as impolitic as it is unjust. No foreign merchant could with confidence or safety trust his goods or merchandize within the jurisdictional limits of the state, whilst he owed any debt, however remote the period of its becoming due. Even money could not be deposited in the hands of an agent, for the purpose of purchasing the products of our country, without great risk of being seized by some greedy creditor, to whom the debt was not yet due. It is impossible to believe that the legislature ever intended to sanction proceedings so impolitic and unjust. They are not authorised by the letter of the law; and they are incompatible with its spirit.

This view of the cause, renders unnecessary any enquiry into its merits; as we are of opinion that the attachment issued illegally in the first instance, and ought to be dismissed. We are also relieved from groping

Eastern Dis'ct
March, 1827.

M'CLINTOCK
& AL.
vs.
CAIRNES &AL

after the laws of New York in a mass of decisions, apparently contradictory. But it has been urged in the course of the argument on the part of the plaintiffs, that, as the defendants were evidently in a state of insolvency at the time of obtaining the attachment, it follows as a consequence, that all his debts are due. In answer to this reasoning in justification of the present suit, it suffices to observe, that both parties are citizens of New York; where their respective rights would be more properly determined in a *concurso* of creditors, if such proceeding there prevails.

It is therefore ordered, adjudged and decreed, that the judgment of the parish court be avoided, reversed and annulled, and it is further ordered, adjudged and decreed, that this suit be dismissed at the cost of the plaintiffs in both courts.

*Lockett* for the plaintiffs, *M'Caleb* for the defendants.